No. 155.—STAPLETON C. BURCH *et al.* plaintiffs in error, *vs.* JOHN C. BURCH, ex'r, &c. defendant in error.

[1.] Testator lends the whole of his estate to his wife during life or widowhood; on her marriage, he disposes of the whole of his estate. In case she should not marry, he directs, at her death, that the whole of his estate be sold, and the moneys arising from the sale of his estate he bequeaths in various legacies. He did not intend to die intestate, and did not die intestate, in regard to any part of his property.

[2.] In the part of his will in which he disposes of his property, in the event of the marriage of his wife, in the bequest to his brothers and sisters, the testator declares, that "if either of my brothers or sisters should decease leaving no child or children, then and in that case, my will is that their part of said legacy be equally divided betwixt the whole of my brothers and sisters," &c. By a subsequent clause he distributes, in the same way, (by reference to the quoted clause,) at the death of his wife, without marrying, a portion of his estate to his said brothers and sisters ; he gave the whole of his estate to his heirs at law: *Held,* 1st. That the objects of the testator's bounty were to be looked for at the death of his wife; and that the children of one of the brothers who was dead at the date of the will, took as legatees under the will, by necessary implication.

In Equity, in Elbert Superior Court. Decision by Judge JAMES THOMAS, September Term, 1856.

By the will of William S. Burch, upon the marriage of his wife, he ordered his estate to be sold by his executors; and one-third part of the money arising from this sale he " willed and bequeathed to be equally divided between his brothers and sisters, viz : Thomas Burch, Benjamin Burch, Maza Burch, John Burch, *Cheadle* Burch, Polly Johnson, Jenney Divine, Hannah C. Purkins and Sarah Kesee—and is to them, my said brothers and sisters, share and share alike, forever ; but if either of my said brothers or sisters should decease, leaving no child or children, then and in that case my will is that their part of said legacy be equally divided betwixt the whole of my brothers and sisters above-named, and is to each of them forever."

In the event of his wife's dying without marriage, he ordered a

Burch *et al. vs.* Burch, ex'r.

sale as above, and gave one-third of the money "to be equally divided betwixt the whole of my above named brothers and sisters, in manner as above mentioned, and is to each of them forever."

. *Cheadle* Burch was dead when the will was made. His children filed a bill against the executor, claiming the share of the said Cheadle. The bill was demurred to—

1st. Because the legacy was void.

2d. Because the complainants, as heirs at law, cannot hold the executor responsible for the distribution of this lapsed legacy.

3d. Because the executor was entitled to the undisposed of residuum.

. The Court sustained the demurrer on the first ground and over-ruled the other two.

. The whole decision is brought up to this Court for review.

VAN DUZER; AKERMAN, for plaintiffs.

T. R. R. COBB; T. W. THOMAS, for defendant.

*By the Court.*—McDONALD, J. delivering the opinion.

. . The testator lent to his wife the whole of his estate, both real and personal, during her natural life or widowhood. The wife never married; she died in July, 1855. The will was made in 1817. The testator died in January, 1822. He declared in his will, that "in case my wife Elizabeth should not marry, then and in that case my will is, at her death, the whole of my estate, real and personal, be sold, and the moneys arising from the same be put into three equal shares." Again, he says, (after making a final disposition of one-third of the moneys arising from the sale of his estate, and a bequest for life of another third,) "the other share or one-third part of the moneys so arising from the sale of my whole estate, I give and bequeath to be equally divided betwixt the whole of my above named brothers and sisters, in manner as

above mentioned, and is to each of them forever." He uses the following language in the clause of the will to which he refers in that last quoted, where he disposes of his property in the event of the marriage of his wife : " and the moneys arising from the said sale be equally divided betwixt my brothers and sisters, (naming them all,) and is to them, my said brothers and sisters, share and share alike, forever ; but if either of my said brothers should decease, leaving no child or children, then and in that case my will is, that their part of said legacy be equally divided betwixt the whole of my brothers and sisters above named, and is to each of them forever." By the words, " *in the manner above mentioned*," he intends to designate the objects of his bounty at the time the bequest is to take effect, by referring to, instead of repeating the terms used in the prior clause of his will.

[1.] To whom did the testator bequeath the remainder in his entire estate on the death of his wife ? It is clear he did not intend to die intestate. He lent the *whole* of his estate to his wife during her natural life or widowhood. In the event of her marriage, he directed the *whole* of his estate to be taken out of the hands of his wife and to be equally divided, by appraisement, into three equal shares. In case his wife should not marry, at her death, the *whole of his estate*, *both real and personal*, he directed to be sold, and the moneys divided and distributed. There is no bequest of a residuum, because the comprehensive terms used in the will had passed all parts of his estate. He did not die intestate. His legatees in remainder were to be looked for and ascertained at the death of his wife, when the legacies were to vest. He does not give the property to his brothers and sisters. "*At the death*" of his wife, the *whole of his estate* was to be sold, and the *moneys arising* from the sale were to be put into three equal shares. One-third of the *moneys* arising from the sale of his whole estate he gave and bequeathed to the whole of his brothers and sisters. This is all to be done at the death of his wife, and not before. It will be remarked that he confined his bequests to his heirs at law and to their

lineal descendants, in a manner not to conflict with any rule of law.   He had no children, and his wife, and his brothers and sisters, and the lineal descendants of such of them as were dead, were his heirs at law.   He provides for all; and, while an indigent sister is provided for for life, he gives no one, nor does he intend to give, one of the sisters or brothers, or their descendants, any advantage over the rest in the ultimate distribution of his estate.   His wife was one of his heirs at law, and he gives her the advantage over the rest by giving the whole of his estate to her during her life or widowhood; and at her death, one-third of the moneys arising from the sale of the whole estate, to her relatives.   The other two-thirds he gave to his own relatives, co-heirs at law with his wife. But how were the two-thirds given, and to whom?   They were given at the death of his wife.   If any of them "should decease, leaving no child or children, their part of said legacy was to be equally divided betwixt the whole of his brothers and sisters."   If any of his brothers and sisters were dead at the death of the wife, they would not take, nor could their children, if any, take, mediately, through them.   If they were dead, and left no children, the brothers and sisters then living took, under the will, the whole of that part of the estate that the decedent would have taken had he been alive at that time. But if a brother was dead, leaving a child or children, the gift over to the whole of the brothers and sisters, could not take effect, because it was only in the event of the death of a brother or sister, leaving no child or children, that the other brothers and sisters could take.   All the brothers and sisters died before the tenant for life—a state of things which the testator evidently did not contemplate.   The testator intended to provide, in the bequest of those two-thirds of the moneys. arising from the sale of his estate, for this portion of his heirs at law; and he intended, by his will, to accomplish two things: first, two-thirds of the money arising from the sale of his estate, he intended to distribute among them precisely as the law would do it; and secondly, to fix the period of their ascertainment, by his will, at the time of his wife's

death, instead of his own.  If the testator intended this, the inquiry is, can that intention be carried into effect?  The brothers and sisters were all dead at the period alluded to. There was no one to take under the bequest over.  The testator did not intend to die intestate.  If there had been a surviving brother or sister, he or she could not take the part that a deceased brother would have taken, if he had left a child or children.  The deceased's child or children could not take through him as his representative, because it never vested in him.  It follows, then, that the child or children of the deceased brothers and sisters were, under the circumstances of this case, the manifest objects of the testator's bounty, and they took the legacy by necessary implication.  Legacies, by implication, are not favored against the heir at law and residuary legatees.  There is no residuary legatee here, and the implication is in favor of the equal provision that the testator intended to make for his heirs at law.  It seems to be an unavailable implication that the children of deceased brothers and sisters are the legatees; but the interest they respectively take, is to be ascertained by the number who were dead leaving child or children, and precisely as under our Statute of Distribution, the lineal descendant should stand in the place of the deceased parent.  (*Ex parte Rogers*, 2 *Mad. Rep.* 576 ; *Crowder vs. Clewes*, 2 *Vesey*, *Jr.* 449; *Wainwright vs. Wainwright*, 3 *Vesey*, *Jr.* 555.)

[2.] Cheadle Burch, one of the brothers, was dead at the time the will was made, and the complainants, (some of them,) who are his children, are claiming the share to which he would have been entitled had he been living at the death of Elizabeth Burch.  His children are not entitled through him. If their right depended on their father's having taken the legacy, it could not be sustained.  What has already been said, is sufficient to establish their right as legatees—its nature and extent.  The terms, "should decease," used in the will, would seem to refer to the future.  To conform the will to the manifest intention of the testator, we shall construe the words, " should decease," to include the children of Chea-

dle Burch. In the case of *Jarvis vs. Pond*, (8 *Simons*, 549,) the words of the will were, "And in case of the decease of any of my sons or daughters"—and then was a gift over to the children—it was held that the children of two of testator's children, who were dead at the date of the will, were entitled under the will.

The bill is not very clearly drawn, to present fully the rights of the complainants, as we have determined them, that they are entitled, not through their deceased parent, as his heirs at law, but as persons entitled, in their own right, as the proper legatees under the will. If necessary, the bill may be amended to suit the judgment of this Court.