FREEMAN WALKER, et al., ex'ors, &c., plaintiffs in error, vs. PERSONS WILLIAMSON, et al., defendants in error.

[1.] Grand-children cannot take in a will, under a bequest to children, unless there be something in the will to indicate and effectuate such intention by the testator.

[2.] Nothing would pass to a son of a testator, under a bequest to his children, who died in the lifetime of the testator.

[3.] Where there is a power of appointment, the execution of the power must fail, before the property, the subject of the appointment, can be distributed.

[4.] Children of a testator's children who died before the making of the will, take under a bequest to his children, living at the time the estate is to be divided, and their representatives, if they should be dead.

[5.] If there be an intestacy in regard to any part of a testator's estate, the executors shall hold it in trust for the benefit of the next of kin of testator.

[6.] A son, in life at the time of the making of the will, but who dies in the lifetime of the testator, does not answer the description of children, to whom the property is given.

[7.] Legatees are not to account for property as advancements given to them in a will, in the distribution of a part of the testator's estate not disposed of by the will.

Equity, from Taylor. Tried before Judge LAMAR, April Term, 1858.

Persons Walker died, leaving a will, directing in 2d item, that all of his property should be kept together by his wife, until his son George Washington was twenty-one years of age, or married, having power, in her discretion, to lend to such children as should marry before George was of age or married, such negro or negroes as she might see proper; and when the event of George's attaining to majority or marry-

ing took place, all his negroes, including such as may have
been lent to his children, were to be brought together, and a
division made among his children, share and share alike;
the negroes being divided into lots, and each child drawing
a lot.

*Item 3d.* Before this was done his wife was to select seven negroes for her use and benefit, and subject to her control
alone, during life or widowhood, and to have 500 acres
of land including the homestead, wherever she shall select,
all the household and kitchen furniture, and as much of the
stock as she thought she should need; and at her death, said
property to be equally divided between his children.

*Item 4th.* And he wills the property falling to his daughters, free from their husbands' control, &c., and if either of
them dies without issue, then the property given to such
daughter, is to revert back to his other children in life, or
their children, if they be dead leaving children, to be equally divided between them. The income only of the property
given to his daughters, is to be at the disposition of their husbands, for the benefit of their families.

*Item 5th.* All money arising from his property, over and
above a sufficiency to support his family, and educate his
children in a proper manner, was to be loaned at lawful interest, into good hands, with security, until the division took
place.

*Item 6th.* He desires his wife to manage as she pleases, the
money arising from her part after the division, so that if misfortune should be the lot of any of their children, she should
be the better able to aid and protect such child. If his wife
married, she was not to take the property above appointed
to her, but an equal division was to take place, and she take
a child's part.

*Item 8th.* Directs his lands wherever found, to be sold in
the counties respectively where they are, to the highest bidder—terms, three payments, annually, in small notes and
approved security.

*Item 9th.* The stock left after his wife's choice, to be sold, and proceeds divided equally between his children, or their representatives, if dead.

*Item 10th.* To his three grand-children, Persons Williamson, William A. Williamson, and Carey Walker, son of Allen Walker, deceased, each the sum of $500 at the time of the division, to be lent out at lawful interest by Lawrence and Freeman Walker, until said grand-children arrive at majority, and then principal and interest paid to them ; and said Freeman and Lawrence were to give security for the payment of the same at that time; his said sons, Freeman and Lawrence, and Allen F. Owen appointed executors, and Owen to be employed whenever an attorney was required in the affairs of the estate, at a fair compensation for his services.

Persons Williamson, William A. Williamson, by their guardian *ad litem,* James Williamson, and Carey Walker, by his guardian, Carey T. Cox, filed their bill, alleging that Persons Walker died 18th March, 1854, possessed of a large estate, leaving his will dated 16th March, 1850, which was admitted to probate 5th day of June, 1854, and letters testamentary issued to Freeman and Lawrence Walker, who immediately took charge of the estate, and sold the perishable property for a large sum, and that George Washington having arrived at the age of twenty-one years, the negroes were brought together, and the widow selected her seven, and the remainder were left for distribution.

And complainants allege, that they did not at that time, and have not since, received any portion of said negroes. The bill goes on to set forth particularly, the assets in the hands of the executors.

Persons and William A. Williamson allege that they are the only children of James Williamson and Euphrasia Williamson, his wife, and that said Euphrasia was the daughter of said testator; that their parents married the 18th November,

1841, and that they were the issue of such marriage; and that the said Euphrasia died 19th November, 1844; that said testator did not, in his life time, give to said James and Euphrasia, his wife, or to said Persons or William A., any property whatever, nor have said executors allowed them any except the $500 each, which is held by said executors in trust, until each shall arrive at majority respectively.

The bill alleges that Carey Walker is the son of Allen Walker, who was the son of testator, and said Allen died previous to testator, leaving said Carey his sole heir, and that said Allen did not, in his lifetime, receive from testator anything, nor have the executors ever allowed the said Carey anything except the $500, which is held by them in trust, until the said Carey attains majority. That Carey T. Cox has been appointed guardian of said Carey Walker. At the death of testator he had nine children living, who, with complainants, are the heirs at law of said testator; that if Philip Walker, one of the children living at the time of the making the will, had been living at testator's death, he would have been entitled to his distributive share of the estate, and that inasmuch as said testator died without altering the bequest to Philip, that said Philip's interest in said estate lapsed, and that testator died intestate as to said interest; and that they, (complainants,) ought to receive two-elevenths of said Philip's share; and that the executors are trustees holding said share for the heirs at law of Philip; and that they have not allowed complainants interest, or otherwise any part of Philip's share of the estate.

Complainants aver that the testator did not dispose, in his will, of the money arising from the sale of land, from the sale of cotton, from solvent debts; and as he did not, they are entitled to, and should receive thereof, two-elevenths; and that the executors have not allowed them in trust, any portion of said fund. That the testator advanced to his nine children named in the will, a large amount, to the exclusion of your orators, except as to the $500 before mention-

## MACON, JUNE TERM, 1858.    553

Walker et al. ox'ors, &c. vs. Williamson et al.

ed, to each; and that before the said nine children should receive any of the fund mentioned undisposed of by will, complainants should receive an amount out of said fund, sufficient to make them equal with those nine children, who have been thus advanced; that they are heirs at law of testator, and should receive an equal part of his estate; and pray the judgment of the Court,- if they are not entitled to an equal share of property to be returned to the estate from the widow, and divided.  That the executors refuse complainants any interest in said estate, except the $500 each.

The defendants demurred to the bill on the grounds,

1st. That there was no equity in it.

2d. That there are not proper parties to it.

3d. That complainants have no right to call on defendants for any answer, or for any relief, touching the subject matter of the bill.

4th. That it appears from the bill, that they are not entitled to the relief prayed for, or any at all; that if they are, they are not entitled to call on these defendants for it, but on the administrator.

The Court overruled the demurrer and held, that complainants took no portion of the negroes bequeathed under the third item of the will, as representatives of their deceased parents, or because Philip Walker, living at the time of the making of the will, died before the testator, childless.

That the money arising from various sources named, and in the hands of the executors, undisposed of by the will, is the residuum of testator's estate, to shares of which complainants are entitled, *per stipes*, among the next of kin of testator; that the complainants were entitled to the proceeds of the sale of stock, &c., under the tenth item of the will.

That the said executors are, as to the undisposed of residuum under said will,. trustees for the next of kin of testator, and should account to the complainants for their respective shares.

To all of which rulings and decisions of the Court, the defendants, by their solicitors, excepted and assign error.

REESE & CORBETT, for plaintiff in error.

STUBBS & HILL, for defendant in error.

*By the Court.*—McDONALD, J. delivering the opinion.

The period having arrived at which the testator's estate was to be distributed, the complainants file their bill claiming to be entitled, as heirs at law of the testator, to distributive shares of parts of his estate, which they insist do not pass by the will. One of the testator's children, Philip Walker, named as a legatee in one clause of the will, died in the lifetime of the testator, leaving no issue; his legacy lapsed, they allege, and that they are entitled to a part of that lapsed legacy.

The bill was demurred to on the grounds set forth in the statement of the case. The presiding Judge in the Court below overruled the demurrer, and error is assigned on his judgment.

[1.] The complainants, as heirs at law of the testator, are entitled to a ratable proportion of that part of his estate, and that only, which did not pass to legatees under the will. The negroes all passed by the second item in the will, absolutely, except seven, which the wife, by the third item in the will, was authorized to select for her own use, during her life or widowhood. They passed to the children of the testator. Grand-children cannot take by the description of children, unless there be something in the will to manifest that intention. There is nothing of that sort in this will.

[2.] Nothing could pass to Philip Walker, for he is not named; and at the death of the testator, he was dead. He was not a child. Under that item of the will, then, there was no lapse into the estate of the testator, of any interest in the negroes, by reason of the death of Philip Walker in the life

time of testator.  It is unnecessary to consider the question of lapse under the third item of the will, as the tenant for life or during widowhood, is still in life.   The complainants, therefore, could take no part of the negroes under the second item of the will, and could take none as an interest lapsed by the death of Philip Walker.

[3.] The fourth item in the will settles the portion of his estate to which his daughters shall be entitled, to their separate use for life, with remainder to their children, &c., &c.

The fifth item gives directions as to the surplus of his crops, after supporting his family.   It is to be loaned at interest until the division of his estate.   By the sixth item the wife is directed to dispose of the proceeds of the sale of the crops as she may think best, so that she might be able to assist any child who may have been unfortunate.   The object of the testator in giving this power to the wife, is expressed by him.   If the wife should not execute the power during her life, this fund will fall into the estate at her death, and be then distributable among the children, and representatives of children, as property undisposed of by the will.

[4.] The seventh item directs that if the wife should marry, she shall not take the seven negroes, land, &c., but that an equal division should be made at the time mentioned, and she should take a child's part.   To have set apart to her a child's part, the portion must have been ascertained according to the statute of distributions, and each living child, and the representatives of deceased children, must have been counted, to arrive at the number of shares.   This shows that the equal division of estates, provided for by the statute, was in the testator's mind, and this conclusion is supported by the more distinct expression of his purpose, in the ninth item of the will, where he disposes of the proceeds of the sale of the stock, which might be left, after his wife had taken out what she needed, equally among his children living at the time, or their representatives, if they should be dead. Here is a disposition of the proceeds of the sale of his stock,

556                SUPREME COURT OF GEORGIA.

Walker et al. ex'ors, &c. vs. Williamson et al.

precisely such as the law makes, except that the wife is excluded. The children and representatives of children take together. *Burch vs. Burch*, 20 *Ga. Rep.* 834, 839 ; *Jarvis vs. Pond*, 9*th Simon's Equ. Rep.* 549. There is a good reason for the exclusion of the wife, for she was to take all the stock she needed, and it would not have been equal to have permitted her to take a part of the proceeds of the sale of the balance.

The lands and notes are not disposed of by the will, except the notes given for the crops, and notes, if notes were taken, for the stock when sold.

[5.] There being an intestacy in regard to the lands and notes not disposed of, they must be distributed as intestates' estates, and the complainants are entitled to their share. There is no necessity for an administration on the part of the estate not disposed of by the will.

The Act of 1828 declares, that the executors shall hold it as trustees for the next of kin of the deceased. *Cobb Dig.* 327.

[6.] According to the interpretation we put on the will, the entire interest intended for Philip Walker in the estate, lapsed by his death without issue in the life time of the testator. He could take no interest under the second item of the will. The children who are beneficiaries under that item are not named. The negroes are given to the children as a class, and he was not of that class at the death of the testator.

[7.] It is insisted that the negroes given by the will, should be considered as advancements to the children to whom they were given, and that they should be accounted for in the distribution. The testator directed, that all negroes lent to his children either by himself in his lifetime, or that might be lent by his wife after his death, should be brought together, at the time appointed for the division, and divided among his children. It is clear, that from some unexplained motive, he did not intend his grand-children to receive any part of his negroes. He gave them pecuniary legacies, which he may have intended as a substitute for negroes. He gave

no such legacies to his children. He seems to have intended to make a distinction, and we are not authorized to overrule his purpose. Our statute applies to intestates' estates, and, therefore, can have no reference to advancements by way of legacy.

If a testator dies intestate purposely, as to part of his estate, and he gives parts of his estate to children who would be distributees of his estate if he had died intestate as to his whole property, and who would share with other children to whom nothing is given by the will, it must be presumed that he intended to give some of his children an advantage over the rest. We should disappoint his purpose, and indeed, make a will for him, if we were to hold that the legatees should account for what they received under the will, before they could share in the undisposed part of the estate. It is seen that we do not affirm all the rulings of the presiding Judge in the Court below, but we affirm his judgment in overruling the demurrer to the complainants' bill.

Judgment affirmed.