## KEMP *et al. v.* LEWIS.

1. A testator devised certain land to his son P., to be delivered to him on his arrival at age, "and not before, in fee simple. . . And after his death I give and bequeath said land to his children, and the issue of such of his children as may be dead, to be divided according to the present statute of distributions among his issue." The son arrived at age and came into possession of the land devised, and during his lifetime conveyed a certain portion of it to L., and died leaving no children or the issue of children. After the death of P. without children or the issue of children, the heirs at law of the testator brought ejectment against L., to recover the land conveyed. The trial judge, to whom the case was submitted under an agreed statement of facts, rendered judgment for the plaintiff for six sevenths of the land and for the defendant for one seventh; there being seven children of testator at the time of his death. *Held*, that this was error. On the death of P. without children and without issue of children, the land reverted to the estate of the testator.

2. P. took nothing of the reversionary interest by inheritance, and L., holding under a conveyance from P. during his lifetime, took only an interest in the land conveyed during the life of P.

AUGUST 31, 1917.

Complaint for land. Before Judge Hardeman. Screven superior court. May 19, 1916.

*J. W. Overstreet,* for plaintiffs.

*E. K. Overstreet,* for defendant.

HILL, J. H. R. Kemp and others brought ejectment against S. L. Lewis, to recover certain described lands. The case having been submitted to the trial judge on an agreed statement of facts, he decided that the plaintiffs were entitled to six sevenths of the premises sued for, and the defendant to one seventh. The agreed statement of facts was as follows: "The land in dispute was owned by Alexander Kemp at the time of his death, and is a part of the

land covered by item fourth in the will of said Alexander Kemp, dated August 22, 1859, and probated and admitted to record December 2, 1859, as sued for in paragraph six of plaintiffs' petition. Peter E. Kemp outlived his father, and died intestate. During the lifetime of Peter E. Kemp he conveyed, under warranty deed, the land sought to be recovered by the petition in this case, to the defendant, S. L. Lewis. At the time of his death Alexander Kemp left the following heirs: Peter E. Kemp, H. R. Kemp, and W. H. Kemp, sons, Mrs. Caroline Wells, Miss Rachel Kemp, Mrs. Louisiana Thompson, and Mrs. Harriet C. Gross, daughters. Since the death of Alexander Kemp, W. A. Kemp died intestate, leaving as his heirs the following: Alex. S. Kemp, Mrs. Ida Gross, T. W. Kemp, Mrs. Rosa Brinson, W. Z. Kemp, Henry D. Kemp, Mrs. Laura Brinson, Homer Kemp, Mrs. Mary Clemens, and Mrs. Hattie Roberson. Since the death of Alexander Kemp, Mrs. Harriet E. C. Gross has died, leaving as her representatives her children, Mrs. Penny Howard, Mrs. Agnes Dixon, and John Gross, said children of Mrs. Harriet C. Gross and of W. H. Kemp all being the grandchildren of Alexander Kemp. Peter E. Kemp died intestate, leaving no issue, but only his wife, Mrs. Lucy Kemp. Mrs. Caroline Wells is the duly appointed guardian of Rachel Kemp, an imbecile. Item four of the will of Alexander Kemp reads as follows: 'I give and bequeath to my son Peter, to be delivered to him as soon as he shall become twenty-one years of age, and not before, in fee simple, the following property, to wit: one negro boy named Sandy, five cows and five calves, and two hundred dollars in money. And I will and direct that my executrix, from the time my said son Peter shall become twenty-one years of age, and not before, and during the balance of his entire life, but not subject to his debts or contracts, nor to be rented by him to use without charge of waste, the following tracts of land lying and being in said county, it being the southern portion of the body of land on which I now reside, and is about one third of said body of land, and containing, as near as I can judge, about eight hundred acres, more or less, and will be embraced and which I now direct to be run, commencing at my land corner standing in a field of Augustus L. Roberts, and to be run along on what I call the line of my Stewart tract until it passes the house recently occupied by Alfred Freeman about three hundred yards, and then to corner

there, and then run so as to divide what is known as the Whiley old field in equal parts, pursuing the same course until it strikes the line which divides the land of Green Waters from my land. It will then be bounded by lands of Green Waters, Joseph Arnett, Robert D. Sharpe, Augustus L. Roberts, William B. Lariscy, and the balance of said body on which I now reside. And after his death I give and bequeath said land to his children and the issue of such of his children as may be dead, to be divided according to the present statute of distributions among his issue.' The following is an extract from item eleven of the will of said Alexander Kemp: 'For it is my will and desire to give and bequeath to each of my children equal amounts; and in thus equalizing their respective amounts, I devise that the land loaned to my sons shall be charged to them respectively, at its fee-simple value, and the life-estate in the land bequeathed by me, as aforesaid, to my daugh- ters, be charged to them respectively at its fee-simple value.' The plaintiffs claim the entire title to the land sued for under the said item fourth of the will of Alexander Kemp; defendant claims a one seventh undivided interest in said land, as the purchaser from Peter E. Kemp under warranty deed, and claims that Peter E. Kemp, outliving his father, took a life-interest under said item fourth of said will, and a one-seventh remainder interest by inheritance, which passed to his successor in title, defendant holding under said warranty deed. Defendant admits that plaintiffs are entitled to six sevenths of the land sued for." The plaintiffs except to the judgment of the court, and insist that they are entitled to the entire tract of land for which suit was brought, instead of to six sevenths, as the trial judge decided.

In *Nussbaum* v. *Evans,* 71 *Ga.* 753, the present will was under review. At that time the entire estate seems, according to the opinion, page 755, to have been distributed in accordance with the terms of the will. The question there raised was whether the interest of Robert W. Kemp, a son of the testator, who had arrived at age and received his specific portion of the devise of land under the will, and who had died without children or the descendants of children, was subject to the debts of Robert W. Kemp. This court held "that upon the death of the son without children or the descendants of children, the land reverted to the estate of the testator, and was not subject to the debts of the son." We think the prin-

ciple there ruled is controlling in this case. But it is argued that if the land reverted to the estate of Alexander Kemp it passed from under the will, because there is no residuary clause making disposition of the property in the event of the death of the life-tenant without children or the issue of children, and therefore that the reversionary interest did not pass by purchase but by inherit-ance, and would descend to the heirs at law of the testator, Alex-ander Kemp, at the time of his death; and as P. E. Kemp was then in life, a portion of the land (one seventh) was inherited by him and passed to his vendee and those holding under him. The answer to this contention is that the land did not revert, and could not, until "the *death* of the son without children or the descend-ants of children." *Nussbaum* v. *Evans,* supra. This event could not be determined until the death of the son. The son being dead, of course he could not inherit; and the son could not inherit be-fore the testator's death, because no one is heir to the living. There had been the happening of no event which under the will must hap-pen, or the absence of provisions in the will, by reason of which the son could inherit. In the body of the opinion in 71 *Ga.* (page 757) the court, speaking through Mr. Justice Hall, said: "The interest of Robert W. Kemp in this estate ended with his life; and there being in esse no one to take in remainder, it necessarily re-verted to the estate of the testator, and goes into the hands of his administrator to be distributed among his heirs." Reliance is had by the defendant on § 3674 of the Civil Code of 1910, which provides: "An estate in remainder is one limited to be enjoyed after another estate is determined or at a time specified in the fu-ture. An estate in reversion is the residue of an estate, usually the fee left in the grantor and his heirs after the determination of a particular estate which he has granted out of it. The rights of the reversioner are the same with those of a vested remainderman in fee." But the will not only creates the life-estate, but a con-tingent remainder, the happening of which never took place, namely, the leaving of children or issue of children by P. E. Kemp at his death. And as the contingency on which it was based never happened, the remainder estate reverted to the estate of the testator, as decided in the *Nussbaum* case, supra. As P. E. Kemp took nothing of the reversionary interest by inheritance, he being dead, those holding under him took only what he had to convey,

namely, an estate during the life of P. E. Kemp in the land sold by him, and on Kemp's dying childless and without issue of children the land reverted to the estate of the testator. See *Edwards* v. *Edwards,* ante, 12 (92 S. E. 540).

*Judgment reversed. All the Justices concur.*

ATKINSON and GILBERT, JJ., concurring specially. The case of *Nussbaum* v. *Evans, 71 Ga.* 753, involved the same will, and it was held that one of the testator's sons, who at his death occupied the same status as the testator's son Peter, did not take a fee-simple estate in the land devised to him. That ruling is controlling upon that question as involved in the present case. We therefore concur in the judgment.